## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-23018-KING/DAMIAN

KIMARIE STRATOS,

     Plaintiff,

v.

AIG PROPERTY CASUALTY COMPANY,

     Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 OR IN THE ALTERNATIVE, RENEWED MOTION TO ENFORCE SETTLEMENT AND REQUEST FOR ATTORNEYS' FEES [ECF NO. 49]

THIS CAUSE is before the Court on Defendant, AIG Property Casualty Company's ("Defendant" or "AIG"), Motion for Sanctions pursuant to 28 U.S.C. § 1927 or in the Alternative, Renewed Motion to Enforce Settlement and Request for Attorneys' Fees [ECF No. 49], filed March 13, 2023 (the "Motion").[1]

THE COURT has considered the Motion, the Response and Reply thereto and their exhibits [ECF Nos. 57, 58, 59],[2] all pertinent portions of the record, and the relevant legal authorities and is otherwise fully advised in the premises. For the reasons set forth below, the Court finds that, under the circumstances presented, an award of sanctions pursuant to Section 1927 or the Court's inherent powers is unwarranted and therefore denies the Motion.

---

[1] This matter was referred to the undersigned by the Honorable James Lawrence King, United States District Judge, for a report and recommendation and all such judicial proceedings as are permissible under the Magistrates' Act and the Rules of Court for the Southern District of Florida. [ECF No. 50].

[2] AIG's Reply was incorrectly filed as a motion [ECF No. 58] before the Clerk's Office corrected the error [ECF No. 59].

## I.   GENERAL BACKGROUND

### A.    The Underlying Lawsuit

Plaintiff, Kimarie Stratos ("Plaintiff" or "Stratos"), initiated this action against AIG on June 3, 2021, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, seeking damages for breach of an insurance policy for the alleged failure to pay for losses sustained to her property. [ECF No. 1]. AIG removed the action to this Court on August 19, 2021. *Id.* Stratos filed two additional related lawsuits: one against AIG that remains pending in the Miami-Dade County Circuit Court (No. 2021-013011-CA-01, *Stratos v. AIG Property Casualty Co.*); and another against Lexington Insurance Company ("Lexington") in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, which was removed to this Court on August 27, 2021 (No. 21-cv-61817-JLK, *Stratos v. Lexington Insurance Co.* (the "Lexington Lawsuit")). *See* [ECF No. 7].

### B.    The Settlement Of The Lawsuits And Termination of Daniels Law

On May 4, 2022, Stratos, AIG, Lexington (who is represented by the same counsel as AIG), and their counsel attended a mediation where the parties reached a global settlement of all three cases and agreed to certain terms regarding payment of the settlement amount. Mot. at ¶¶ 1-2. Thereafter, on May 7, 2022, the mediator filed a Report indicating the parties had reached an agreement and were preparing settlement documents. [ECF No. 20]. Two days later, on May 9, 2022, before the parties executed a settlement agreement or filed stipulations for dismissal, the Court entered a "Final Order of Dismissal," dismissing the instant case and expressly stating: "The Court shall retain jurisdiction to enforce the terms of the agreement."[3] [ECF No. 21].

---

[3] The mediator filed the same Report, and the Court entered the same Final Order of Dismissal in the related Lexington Lawsuit. [ECF Nos. 21 and 22 in the Lexington Lawsuit].

Pursuant to the terms agreed upon at mediation, counsel for AIG and Lexington sent a proposed settlement and release agreement ("release agreement") and tendered the agreed upon settlement amount to Plaintiff's former counsel, The Daniels Law Group, PLLC ("Daniels Law"). Mot. at ¶ 3. Daniels Law provided a copy of the release to Stratos, and, over the next three months, Daniels Law attempted to obtain a signed copy of the release agreement back from Stratos to no avail. Although Stratos did not raise any objections to the terms and conditions of the release agreement, she did challenge the amount of fees owed to Daniels Law under the agreement and otherwise refused to sign the release agreement, until September 22, 2022, when she sent Daniels Law a unilaterally modified signed release agreement, without conferral or agreement from AIG or Daniels Law regarding the modifications.

On October 7, 2022, Stratos terminated Daniels Law as her counsel, following which Daniels Law returned the settlement checks to AIG's counsel [ECF No. 27 at ¶ 12], filed a motion to withdraw as counsel for Stratos [ECF No. 24], and filed Notices of Charging and Retaining Liens in each of the three matters [ECF Nos. 22 and 23]. Ultimately, the parties found themselves back before this Court with no signed settlement and release agreement, no funds having been distributed, and no agreement as to the amount of fees owed to Daniels Law.

### C.  *AIG's And Lexington's Motions To Enforce Settlement Agreement*

On December 5, 2022, AIG filed a Motion to Enforce Settlement or in the Alternative, Motion for Leave to Deposit Funds into Court Registry, seeking an order enforcing the terms of the parties' agreement reached at mediation, compelling Stratos to execute the proposed

3

release agreement and accept payment of the settlement amount from AIG and Lexington,[4]
and seeking attorneys' fees. [ECF No. 27]. AIG and Lexington also requested that, in the
event the issues between Stratos and Daniels Law regarding attorneys' fees could not be
resolved, they be permitted to deposit the settlement funds in the Court's registry pending
resolution of those issues. *Id.* And AIG requested the Court award AIG attorneys' fees and
costs in connection with bringing the Motion. *Id.* at 6.

Stratos responded to AIG's Motion through newly retained counsel and argued, *inter
alia*, that the settlement did not need to be enforced because the parties agree on its material
terms and that this Court did not have jurisdiction to enforce the release agreement because
the case had been dismissed by way of the Court's May 9, 2022, Final Order of Dismissal
[ECF No. 21]. Daniels Law, through counsel, also responded to AIG's Motion and argued,
*inter alia*, that it should not be compelled to make any distributions or to hold any funds in its
trust account since it is no longer counsel in this case. [ECF No. 33].

On January 23, 2023, the undersigned held a hearing on AIG's and Lexington's
Motions in the two related federal cases. Counsel for AIG and Lexington, Daniels Law, and
Stratos appeared, as well as Stratos herself. At the hearing, all counsel agreed that there is no
dispute regarding the overall settlement amount to be paid by AIG and Lexington and that
the settlement amount is not affected by the amount ultimately owed or paid to Daniels Law.
All counsel further agreed that if the amount in dispute over Daniels Law's fees is retained in
an attorney trust account, the remaining portion of the settlement amount may be paid to
Stratos to distribute among the remaining payees. Thus, based largely on the agreement of
counsel on behalf of all parties and non-parties affected by the pending settlement, the Court

---

[4] Lexington filed the same Motion in the Lexington Lawsuit. *See* ECF No. 28 in that action.

granted AIG and Lexington's Motions to Enforce the Settlement Agreement to the extent AIG and Lexington sought an order requiring payment of the settlement amount and requiring Stratos to execute the release agreement in the form agreed upon at the hearing. *See* ECF No. 42 ("Omnibus Order").

All parties, non-parties, and counsel agreed on the record to the breakdown of payments to be made pursuant to the settlement, and the Court's written Order specifically laid out the amounts to be paid and the breakdown of the payees pursuant to the parties' and non-parties' agreements. In that Order, the Court also denied AIG and Lexington's request for attorney's fees without prejudice and directed them to file a renewed motion for fees within fourteen (14) days, or by February 6, 2023. *Id.* at 5.

### D.       *Daniels Law's Motion To Adjudicate And Enforce Charging And Retaining Liens*

While AIG's and Lexington's Motions to Enforce Settlement were pending, on January 6, 2023, Daniels Law filed a Motion to Adjudicate and Enforce Charging and Retaining Lien. [ECF No. 34]. On August 2, 2023, the Court granted Daniels Law's Motion in part and ordered Stratos's current counsel to distribute to Daniels Law $26,258.00 in attorneys' fees and costs from the "Fees and Costs Payment" portion of the settlement funds issued by AIG and Lexington and held in its Trust Account to satisfy Daniels Law's charging lien. [ECF No. 61].[5]

---

[5] The deadline set out in the Order by which Stratos's counsel was to distribute the funds to Daniels Law came and went, with no funds having been transferred. Consequently, on August 18, 2023, Daniels Law filed an Emergency Motion for an Order to Show Cause why Stratos's counsel should not be held in contempt for violating the Court's August 2nd Order. [ECF No. 62]. The Court denied the Motion as moot after the parties confirmed that payment was made to Daniels Law by the Kleppin Law Firm on August 22, 2023. [ECF No. 70].

### E. AIG's Motion For Sanctions Pursuant To 28 U.S.C. § 1927 Or In The Alternative, Renewed Motion To Enforce Settlement And Request for Attorneys' Fees

On March 13, 2023, while Daniels Law's Motion was pending, AIG filed the Motion now before the Court, asserting that Stratos refused to accept the Indemnity Payment on the belief that the check should not include specific payees with whom Plaintiff had contracted for services. Mot. at 5. AIG further argues that instead of complying with the Court's prior Order, Stratos once again unilaterally altered the release without conferring with AIG and Lexington and without regard for the Court's ruling directing that the payment include those payees. According to AIG, Stratos was now demanding the insurers re-issue the Indemnity Payment and exclude the names of the payees, which AIG and Lexington refused to do. *Id.* at 6; *see also* ECF No. 54. AIG also states that Stratos has filed three frivolous Civil Remedy Notice of Insurer Violations ("CRN") regarding AIG and Lexington with the Florida Department of Financial Services for each of the three insurance disputes as retaliation for AIG and Lexington's failure to issue a new Indemnity Payment that excludes the specific payees. *Id.* Notably, Stratos did not request that the Court modify or clarify the Omnibus Order and rulings specifying the breakdown of payments and payees [ECF No. 42].

In light of Stratos's conduct, AIG requests the Court enter an order that, *inter alia*, sanctions Stratos and her current counsel pursuant to 28 U.S.C § 1927, mandates that they reimburse AIG for its costs and fees incurred as a result of their conduct, compels Stratos to accept the settlement funds and return a fully executed copy of the release to AIG, and orders Stratos to withdraw the pending CRNs against AIG and Lexington. *Id.* at 18. Alternatively, AIG requests the Court enter an Order enforcing the settlement agreement and awarding AIG its fees and costs incurred in bringing the Motion. *Id.* On April 10, 2023, Stratos filed her Response [ECF No. 57], and on April 17, 2023, AIG filed its Reply [ECF Nos. 48–49]. On

August 22, 2023, Stratos filed a Supplement to her Response in Opposition to the sanctions

Motion [ECF No. 65 ("Supplemental Response")], appending executed settlement

agreements and releases from the specific payees who were to be paid from the Indemnity

Payment. The Motion is now ripe for adjudication.

## II.    RELEVANT LEGAL STANDARDS

### A.    *Sanctions Pursuant To Section 1927*

Section 1927 states, in pertinent part:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably
> and vexatiously may be required by the court to satisfy personally the excess
> costs, expenses, and attorneys' fees reasonably incurred because of such
> conduct.

28 U.S.C. § 1927. There are three requirements for an award of sanctions under Section 1927:

"(1) an attorney must engage in unreasonable and vexatious conduct; (2) such unreasonable

and vexatious conduct must multipl[y] the proceedings; and (3) the amount of the sanction

cannot exceed the costs occasioned by the objectionable conduct." *Norelus v. Denny's, Inc.*, 628

F.3d 1270, 1281 (11th Cir. 2010) (citation omitted) (internal quotation marks omitted).

Importantly, a sanctions motion under Section 1927 requires a showing the nonmovant acted

in bad faith. *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). Thus, the Eleventh Circuit

has explained, "[a]n attorney multiplies the proceedings unreasonably and vexatiously 'only

when the attorney's conduct is so egregious that it is tantamount to bad faith.'" *Peer v. Lewis*,

606 F.3d 1306 (11th Cir. 2010) (quoting *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230,

1239 (11th Cir.2007)) (internal quotation marks omitted). This standard is satisfied when "an

attorney knowingly or recklessly pursues a frivolous claim." *Id.* In this regard, the "statute

imposes a 'high standard' that requires the moving party to show that the other side engaged

in behavior that 'grossly deviates from reasonable conduct.'" *Hyde*, 962 F.3d at 1310 (quoting *Amlong*, 500 F.3d at 1240).

### B.    The Court's Inherent Authority To Issue Sanctions For Bad Faith Conduct

A sanctions motion under a court's inherent powers similarly requires a showing that the offending party acted in bad faith. *Hyde*, 962 F.3d at 1310. Nevertheless, "[w]hen considering sanctions under the court's inherent [authority], the threshold of bad faith conduct 'is at least as high as the threshold of bad faith conduct for sanctions under § 1927.'" *Peer*, 606 F.3d at 1316 (quoting *Amlong*, 500 F.3d at 1252). In this context, the bad faith standard is subjective and may be met where the moving party provides "either (1) direct evidence of subjective bad faith or (2) 'evidence of conduct so egregious that it could only be committed in bad faith.'" *Daneshpajouh v. Sage Dental Grp. of Fla., PLLC*, No. 19-CV-62700, 2023 WL 5132835 (S.D. Fla. June 20, 2023) (Strauss, J.) (internal quotation marks omitted) (quoting *Hyde*, 962 F.3d at 1310), *report and recommendation adopted*, No. 19-CV-62700-RAR, 2023 WL 4676002 (S.D. Fla. July 21, 2023). "[R]ecklessness alone does not constitute conduct tantamount to bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). And, "[b]ecause of their very potency," federal courts must exercise inherent powers "with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

### III.    DISCUSSION

With the foregoing in mind, the Court addresses the issues raised in the Motion and related memoranda now before the Court.

#### A.    *Issues Raised In The Motion And Memoranda*

In the Motion, AIG argues Stratos and her counsel intentionally sought to delay the resolution of this and the related proceedings by demanding that AIG re-issue the Indemnity Payment and unilaterally modifying the release to exclude the specific payees. Mot at 12. Furthermore, AIG asserts that Stratos's filing of the CRNs further multiplies the proceedings and burdens AIG by misrepresenting the Court's Omnibus Order inasmuch as the CRNs assert that AIG ran afoul of the Order by failing to pay the settlement amount. *Id.* As a result, AIG maintains that the prolonging of the case has increased its costs and exposed it to additional liability from the excluded payees. *Id.* at 13. This evidence, AIG argues, establishes unreasonable and vexatious conduct on the part of Stratos and her counsel, tantamount to bad faith and sufficient to merit an award of sanctions under both Section 1927 and the Court's inherent power. Alternatively, AIG requests the Court enforce the settlement agreement by requiring Stratos and her counsel to execute the release and accept the settlement funds and that the Court award AIG its attorneys' fees incurred in enforcing the settlement. *Id.* at 17. Notably, AIG points out that Stratos made clear that she is representing herself as co-counsel with her newly retained counsel, the Kleppin Law Firm.

The Kleppin Law Firm filed a Response on behalf of Stratos contending that, as an initial matter, AIG's Motion is procedurally barred for noncompliance with Federal Rule of Civil Procedure 54 and Local Rule 7.3. *See* ECF 57 ("Response") at 7–9. Specifically, Stratos contends, *inter alia*, that AIG failed to make a good faith effort to resolve the issues raised in

the Motion prior to filing it and unilaterally sought a determination as to attorneys' fees. *See* Response at 8–9. Stratos does not contest that she refused to accept the settlement funds nor that she filed the CRNs. Rather, she attests that her actions were in compliance with the Court's Omnibus Order because the Order did not expressly direct AIG to include the three specific payees on the Indemnity Payment. To the extent AIG asserts Stratos unilaterally modified the releases without the approval or consent of AIG, Stratos argues she took efforts to negotiate releases with the specific payees, and, as such, AIG faces no exposure to liability for any claims those payees may have to the funds. Resp. at 12. With respect to the filing of the CRNs, Stratos's counsel contends he was uninvolved with and unaware of the filings when they were done but that Stratos's actions are justifiable because it appeared to her that AIG was intentionally delaying her access to the settlement funds. Resp. at 13.

Stratos also argues this Court lacks authority to direct any action with regard to the CRNs, which are not before the Court. And, Stratos avers that courts agree that "merely unintended, inadvertent, and negligent acts will not support the imposition of sanctions under [S]ection 1927," Resp. at 15 (citing *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990)), and argues that what transpired following the entry of the Court's Omnibus Order does not constitute vexatious and unreasonable multiplication of the proceedings by Stratos or her counsel. As to AIG's request that this Court issue sanctions under its inherent powers, Stratos argues there is no authority for the Court to do so because another mechanism to issue sanctions exists—Section 1927. Resp. at 15. Lastly, reiterating much of her prior arguments, Stratos purports that AIG's contentions are without merit and there is no basis to issue sanctions because: the Court's oral statements during the January 23, 2023, hearing were inconsistent with its written Omnibus Order; the Indemnity Payment has not been rejected, as obtaining all payees' respective signatures is a time-consuming process; Stratos did not

remove the payees from the release because the Court did not direct the parties to include them therein; the CRNs are not without merit and not before this Court; and the incurrence of fees was the result of AIG's own conduct. Resp. at 16–17.

In its Reply, AIG counters that its Motion complied with Rule 54 because the Rule is clear that a Court may first determine entitlement to fees before receiving submissions on the value of services. [ECF No. 58 ("Reply")] at 2–3; *see also* Fed. R. Civ. P. 54(d)(C) ("The court may decide issues of liability for fees before receiving submissions of the value of services."). Further, AIG argues that its Motion does not fall within Local Rule 7.3 because no final judgment or order has been entered. Reply at 3; *see also* Local Rule 7.3 ("A motion for an award of attorneys' fees . . . arising from the entry of a final judgment or order shall not be filed until a good faith effort to resolve the motion, as described in paragraph (b) below, has been completed."). AIG additionally argues that it did confer with Stratos and her counsel, as evidenced by e-mail communications among the parties and counsel attached to her Response. Reply at 3; *see also* [ECF No. 57-1] at 7–21.

With respect to Stratos's arguments that she did not act in bad faith, AIG again points to e-mail communications in which Stratos rejected the Indemnity Payment on the basis the Court did not direct that the payment be made out to the specific payees. Reply at 4. AIG argues Stratos removed the specific payees from the release, as demonstrated by its receipt of a signed release in February 2023, with the payees crossed out. Reply at 5. Citing *Expert Inspections, LLC v. United Prop. & Cas. Ins. Co.*, 333 So. 3d 200, 204 (Fla. 4th DCA 2022), in which Florida's Fourth District Court of Appeal held that an insurer reasonably issued a check payable to both the insured and an assignee in accordance with a limited assignment of benefits, AIG asserts there was indeed a justification to include the specific payees on the Indemnity Payment because doing so protects it from those entities that may have rights to

the funds, lest it be sued directly. Reply at 5–6. In response to Stratos's argument that the CRN filings are not before the Court, AIG contends the Court has jurisdiction to enforce the settlement agreement and, as such, to foreclose Stratos from pursuing the CRNs because the parties' agreement prohibits Stratos from bringing bad faith claims against it. Reply at 6–7. AIG also refutes that it incurred fees by its own choosing, reiterating that it would like nothing more than to be done with this suit. Reply at 6.

Stratos later supplemented her Response, appending releases executed by the specific payees that indemnify AIG from any claims the payees may have against it. *See generally* Supplemental Response, Exs. 1–3. According to Stratos, she provided said releases to AIG on June 13, 2023, obviating the need for the parties to continue litigating this issue and allowing for re-issuance of the Indemnity Payment solely in Stratos's name. Supplemental Response at 1.

The Court addresses each of these arguments below.

**B.      Analysis**

**1.      Whether AIG Is Procedurally Barred From Seeking Sanctions**

As an initial matter, the Court finds that AIG is not procedurally barred by Federal Rule of Civil Procedure 54(d) from proceeding with its sanctions motion. First, Rule 54 does not apply to sanctions requested under Section 1927. Indeed, the plain language of the Rule dictates that its procedures "do not apply to claims for fees and expenses as sanctions . . . under [Section] 1927." Fed. R. Civ. P. 54(d)(2)(E). Rather, a request for Section 1927 sanctions "is a separate and distinct claim which is penal in nature, governed by different standards and implicating different concerns." *Butterworth v. Lab'y Corp. of Am. Holdings*, No.

12

3:08-CV-411-J-34JRK, 2016 WL 3901379 (M.D. Fla. July 19, 2016). In this regard, Stratos's argument that the Motion must comply with Rule 54 is meritless.

The Court also agrees with AIG that the Motion does not fall within Local Rule 7.3's timeliness or pre-filing conferral requirements, which apply to motions for fees and costs "arising from the entry of a final judgment or order." S.D. L.R. 7.3. Here, AIG's Motion does not arise from either a final judgment or order. Although AIG refers to the Court's Omnibus Order to show Stratos's violation of a Court Order, the entitlement to fees is based on and thus arises from Section 1927 and the Court's inherent power to award fees and not from a final order. Therefore, Local Rule 7.3 does not apply.

Nevertheless, the Motion does violate Local Rule 7.1(a)(3), which requires that counsel for a movant, in connection with any motion other than those expressly excepted from the Rule, "confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion." S.D. L.R. 7.1(a)(3). The Rule also requires counsel for the movant to certify they have done so. *Id.* Contrary to AIG's argument, the e-mail communications threatening to file a sanctions motion do not satisfy the conferral requirements of this Court's Local Rules, and that alone may be cause for the Court to deny AIG's Motion. *See generally* [ECF No. 57-1]; *see also* S.D. L.R. 7.1(a)(3) ("Failure to comply with the requirements of [Local Rule 7.1(a)(3)] may be cause for the Court to . . . deny the motion . . . .").

### 2. *Whether Stratos's Actions Warrant Sanctions Pursuant To § 1927*

Even if AIG were to re-file after properly conferring with the affected parties pursuant to Local Rule 7.1(a)(3), as discussed below, the undersigned finds that sanctions pursuant to

Section 1927 are not warranted. The undersigned agrees with AIG that Stratos's conduct violated this Court's Orders and, without a doubt, unnecessarily prolonged the litigation. The undersigned is not persuaded, however, that Stratos's or her counsel's conduct demonstrated objective bad faith sufficient to warrant sanctions under Section 1927.

Although the bad faith standard under Section 1927 turns on an attorney's objective conduct, the attorney's intent is not wholly irrelevant. Nevertheless, a court "may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings." *Amlong*, 500 F.3d at 1241. Because "a given act is more likely to fall outside the bounds of acceptable conduct and therefore be 'unreasonabl[e] and vexatious[ ]' if it is done with a malicious purpose or intent," his or her "state of mind is frequently an import[ant] piece of the calculus." *Id.* (first and second alterations in original).

### 3.     *Violation Of Court Orders*

All counsel, including Stratos's current counsel, the Kleppin Law Firm, and Stratos, herself, were present before the Court for the January 23, 2023, hearing. That hearing was necessitated by Stratos's refusal to execute releases and, in turn, accept payment from AIG and Lexington after a mediation and global settlement. While Stratos's conduct leading to the unnecessary multiplication and delays of this litigation in this case goes further back, AIG's Motion focuses on the violation of this Court's January 23, 2023, rulings on the record and the subsequent January 24, 2023, Order. During the January 23, 2023, hearing, the Court ruled that the Indemnity Payment would include the specific payees. The following exchange took place:

> MR. ELMASRI: My apologies. A quick point of clarification. I'll be issuing
> check number one [*i.e.*, the Fees and Costs Payment] to The Kleppin Law Firm

for fees in the amount of $72,723.53 and then the second check [*i.e.*, the Indemnity Payment] I will be issuing will also be to The Kleppin Law Firm trust account; however, they will also include the payees . . . .

THE COURT: That is . . . probably the easiest way to do it. I like that solution, as long as the ultimate global amount remains the same. . . .

. . . .

THE COURT: And, Mr. Kleppin, are you okay—that's sort of the modification of the original . . . plan for payment. So I'm just making sure everybody's okay with that. Mr. Kleppin, does that make sense to you?

MR. KLEPPIN: That's fine.

[ECF No. 49-1 ("Hearing Transcript") at 40:24–25, 41:1–24]. There is no question that everyone agreed and the Court confirmed before ruling that the second check (the Indemnity Payment) would also include the additional payees.

The Court's ruling on the record was followed up by the Omnibus Order, which expressly indicated that it was based on the reasons stated on the record and ordered:

For the reasons set forth above and stated on the record at the hearing, it is hereby . . . **ORDERED AND ADJUDGED** that pursuant to the terms agreed by the parties, ***including specific payees***, Defendant shall re-issue payment of the settlement amount with two checks, as follows:

(1) a check in the amount of $72,723.53, payable to The Kleppin Firm, P.A. Trust Account, for the disputed attorney's fees and costs (the "Fees and Costs Payment"); and

(2) a check in the amount of $192,276.47, payable to The Kleppin Firm, P.A. Trust Account, for all other amounts as agreed by the parties (the "Indemnity Payment").

It is further

**ORDERED AND ADJUDGED** that after receipt of the two checks indicated above, Plaintiff shall provide Defendant with an executed release, in a form agreed by Defendant and Plaintiff, indicating receipt and acceptance of the payments, and Plaintiff's counsel, the Kleppin Firm, P.A., shall notify the Daniels Law Group when payment is received and provide to the Daniels Law Group a copy of the executed release as well as confirmation the payments have been deposited into the Kleppin Firm's Trust Account.

[ECF No. 42 at 4–5].

Rather than seek the Court's clarification or modification of the Court's Order, Stratos inexplicably took it upon herself to separately negotiate releases with the specific payees, unilaterally modify the releases with AIG and Lexington, and demand modification of the check, thereby needlessly prolonging the litigation.

Stratos and her counsel's actions, which her counsel claims to have been founded upon the mistaken belief that the Court did not direct AIG to issue the Indemnity Payment to Stratos *and* the specific payees, proved to be misguided and unwarranted. However, the conduct was not so egregious that it was tantamount to objective bad faith. *Cf. Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (affirming district court's imposition of sanctions under Section 1927 where, *inter alia*, attorney handled case in unprofessional manner and frequently failed to follow local and federal rules); *Footman v. Cheung*, 139 F. App'x 144, 146 (11th Cir. 2005) (finding district court properly imposed sanctions under Section 1927 where attorney demonstrated consistent pattern of reckless, unprofessional, and unethical conduct). There is not enough evidence tending to show that Stratos and her counsel separately sought to negotiate the releases with the specific payees in bad faith or that their conduct was unreasonable or vexatious when compared to an objective standard. Similarly, to the extent Stratos and her counsel may have genuinely believed they acted in compliance with the Court's Omnibus Order, the evidence is insufficient to show that Stratos and her counsel knowingly and recklessly pursued a frivolous argument. The fact that Stratos negotiated, obtained, and delivered executed releases from the specific payees to AIG belies the notion their actions fell outside the bounds of acceptable conduct and constituted unreasonable and vexatious conduct committed with a malicious purpose or intent. *See Amlong*, 500 F.3d at

1241. The executed releases also quell one of AIG's greatest concerns: the possibility that AIG will be subjected to additional, unwarranted litigation by the specific payees. *See, e.g.*, Mot. at 12.

For the foregoing reasons, the Court finds that sanctions pursuant to Section 1927 are not warranted under the circumstances presented.

### 4.     *Whether Stratos And Her Counsel's Actions Merit The Issuance of Sanctions Under The Court's Inherent Powers*

In light of the above, the undersigned also finds there is no basis under the Court's inherent powers to award sanctions against Stratos and her counsel. The subjective bad faith standard for inherent powers is at least as high as the objective standard under Section 1927. *Peer*, 606 F.3d at 1316. As courts in this District consistently hold, "[I]f [Section] 1927 sanctions are impermissible, then sanctions under the court's inherent powers are also impermissible." *Agudelo v. Padron*, No. 18-22612-CIV, 2019 WL 4694145, at *5 (S.D. Fla. July 8, 2019) (Torres, J.); *see also Garcia v. Nachon Enterprises, Inc.*, No. 15-CV-23416, 2017 WL 2605052, at *4 (S.D. Fla. Apr. 24, 2017), *report and recommendation adopted sub nom. ERVIN GARCIA, Plaintiff, v. NACHON ENTERPRISES, INC.; CARLOS NACHON; & ACE HARDWARE CORP. (DELAWARE), Defendants.*, No. 15-CV-23416, 2017 WL 2573044 (S.D. Fla. June 14, 2017) (finding no grounds to entertain fee award under the Court's inherent power in the absence of grounds to award fees under Section 1927). Thus, the Court also finds Stratos and her counsel's conduct does not warrant sanctions under the Court's inherent powers.

### 5.     *AIG's Alternative Motion to Enforce Settlement*

In the alternative, AIG renews its Motion to Enforce Settlement Agreement. "[A] district court has 'inherent power to summarily enforce settlement agreements entered into by

parties litigant in a pending case.'" *Ford v. Citizens & S. Nat. Bank, Cartersville*, 928 F.2d 1118, 1121 (11th Cir. 1991) (quoting *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 36 (5th Cir.1967)). "The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract." *Id.* at 1122 (quoting *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989)).

"Principles governing general contract law apply to interpret settlement agreements." *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir.2000). This interpretation is generally a question of state law. *Chem. Bank v. First Trust of N.Y. (In re Se. Banking Corp.)*, 156 F.3d 1114, 1121 (11th Cir.1998). Accordingly, the Court applies the law of Florida, the forum state.

"The public policy of the State of Florida, as articulated in numerous court decisions, highly favors settlement agreements among parties and will seek to enforce them whenever possible." *Sun Microsystems of California, Inc. v. Eng'g & Mfg. Sys., C.A.*, 682 So. 2d 219, 220 (Fla. 3d DCA 1996). The Court previously recognized the settlement agreement among the parties and confirmed on the record with the parties that they were all in agreement as to the terms and did not dispute the global settlement amount. S*ee* [ECF No. 42] at 3–4. Although there is no final settlement agreement executed by the parties, this Court has already found, and again reiterates, that the settlement agreement is enforceable. *See* Omnibus Order at 4. AIG seeks to enforce the settlement agreement to require Stratos to accept the settlement payment checks, including the Indemnity Payment which includes the additional payees; to require Stratos to execute releases as to AIG (and Lexington); to require Stratos to dismiss the bad faith actions; and to require Stratos to pay AIG's fees incurred in bringing the Motion. *See* Motion at 15–17.

First and foremost, in light of the Court's rulings and Omnibus order, which expressly acknowledged that "[c]ounsel for all parties confirmed there is no dispute the parties reached a global settlement, and there is no dispute regarding the global settlement amount," [ECF No. 42 at 3–4], Stratos is required to accept the Indemnity Payment and execute the releases as previously tendered. Although Stratos may now wish the agreement and release had different terms, she has offered no basis for modification of the parties' agreement or this Court's prior Orders. Nor has she sought leave to modify the agreement. "[A] litigant cannot permissibly attack a settlement simply because the relief [she] apparently wanted and the relief to which [she] agreed were not the same." *BP Prod. N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1139 (M.D. Fla. 2007) (citing *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1487 (11th Cir. 1994)).

Second, as AIG points out, the parties' agreement expressly provides that Stratos released AIG and Lexington from bad faith claims. Stratos's actions and conduct in filing the CRNs constitute clear violations of the settlement agreement. Thus, in exercising its inherent power to summarily enforce settlement agreements, *see Ford*, 928 F.2d at 1121, the undersigned may properly require Stratos to withdraw the CRNs.

Lastly, AIG moves this Court for an award of attorneys' fees it incurred in connection with bringing this Renewed Motion to Enforce the parties' settlement agreement. In this context, however, AIG has provided no statutory support for its request. Nor does the settlement agreement and release contain a provision authorizing attorney's fees for litigation seeking the agreement's enforcement. *See, e.g.*, *Circuitronix, LLC v. Kapoor*, No. 15-CV-61446, 2019 WL 2245572, at *3 (S.D. Fla. Apr. 12, 2019) (Valle, J.), *report and recommendation adopted*, No. 15-CV-61446, 2019 WL 3334096 (S.D. Fla. July 25, 2019) ("[E]ach party must pay its own attorneys' fees, unless a statute or contract provides otherwise."). Absent a

statutory or contractual basis for an award of fees, AIG's request for attorneys' fees must be denied.

### 6.   *Order To Show Cause*

Notwithstanding the findings above, based on a *sua sponte* review of the record in this case and the information provided by the parties, the Court concludes Stratos violated the Omnibus Order. "Courts have inherent power to enforce compliance with their lawful orders through civil contempt." *S.E.C. v. Greenberg*, 105 F. Supp. 3d 1342, 1352 (S.D. Fla. 2015). This requires a showing that "(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id.* (quoting *Ga. Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007)).

As set forth in the Order, Stratos was to receive the Indemnity Payment and sign the release. *See generally* ECF No. 42. AIG did not, as Stratos contends, intentionally delay her access to the settlement funds. Instead, AIG's actions and conduct fully complied with the Court's Omnibus Order. Stratos misconstrued the Court's Order and, in doing so, acted in contravention of said Order, needlessly prolonging litigation and causing AIG to incur fees by unilaterally altering the release to remove the Court-ordered specific payees, rejecting the Indemnity Payment, and separately negotiating releases with the specific payees.

Accordingly, Stratos and her counsel are directed to appear and show cause why they should not be sanctioned for their failure to comply with the Court's Omnibus Order, as indicated below.

### IV.   CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that AIG's Motion for Sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent power is **DENIED**. It is further

**ORDERED AND ADJUDGED** that AIG's Renewed Motion to Enforce Settlement and Request for Attorneys' Fees is **GRANTED IN PART AND DENIED IN PART**. The Renewed Motion is GRANTED to the extent AIG seeks to enforce the terms of the parties' settlement requiring Stratos to accept the Indemnity Payment with the payees indicated, as set forth above, execute the release, and withdraw the CRN actions. The Renewed Motion is **DENIED** to the extent AIG seeks attorneys' fees in connection with its Renewed Motion to Enforce the parties' settlement. It is further

**ORDERED** that Stratos and her counsel shall appear on September 27, 2023, at 4:00 PM before the undersigned at the C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, 5th Floor, Miami, Florida 33128, **to show cause** why an order finding it in civil contempt for failure to comply with the Court's Omnibus Order should not be entered against her and her counsel.

**Stratos's failure to comply with this Order may result in the Court finding her in civil contempt or imposing other sanctions to enforce the terms of the Court's Order.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this <u>12th</u> day of September, 2023.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
James Lawrence King, *United States District Judge*
Counsel of Record